# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| AREDIA® AND ZOMETA® PRODUCTS ) | |
| LIABILITY LITIGATION ) | |
| ) | No. 3:06-MD-1760 |
| (MDL No. 1760) ) | Judge Campbell/Brown |
| ) | |
| This Document Relates to: ) | |
| *Tucker/Baber*, 3:06-0523 ) | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge recommends that the motion to dismiss filed by the Novartis Pharmaceuticals Corporation (NPC) in this case (DE 6242; Related Case 22) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot.

## INTRODUCTION AND BACKGROUND

NPC filed a motion to dismiss on November 12, 2012 arguing that Anne Baber (Ms. Baber), who previously had been substituted in this case as "personal representative" in her capacity as executor of the estate ("the estate") of the late Janet Tucker (Ms. Tucker), no longer had the legal authority to prosecute this action in that capacity because the Superior Court of California ("the California courts") discharged Ms. Baber from those duties on May 8, 2012. (DE 6243; Related Case 23) Ms. Baber, through counsel ("Osborn Law" or "Mr. Osborn") filed a response in opposition to NPC's motion on November 29, 2012. (DE 6274; Related Case 24)

The Magistrate Judge entered an order on December 5, 2012 instructing Osborn Law to file a motion to substitute. (DE 6279; Related Case 25) Osborn Law did so on December 17, 2012. (DE 6292; Related Case 26) In its motion, Osborn Law asked the court to substitute Ms. Baber as successor trustee of the "Janet G. Tucker Trust dated November 5, 2008" ("the Trust") for herself as executor of Ms. Tucker's estate. (DE 6292; Related Case 26) NPC objected to the motion to

substitute on December 19, 2012. (DE 6296; Related Case 27) Osborn Law replied on January 2, 2013. (DE 6302; Related Case 30)

The Magistrate Judge entered an order on January 16, 2013 in which he "took these . . . motions under advisement" "[p]ending the submission of additional pleadings." (DE6327; Related Case 37) Osborn Law filed a further response on February 6, 2013 (DE 6366; Related Case 40), following which NPC did the same on February 13, 2013 (DE 6381; Related Case 41).

The Magistrate Judge denied the motion to substitute as untimely on March 26, 2013. (DE 6512; Related Case 45) In his order, the Magistrate Judge stated that he would enter "[a] separate Report and Recommendation . . . recommending that this case be dismissed with prejudice." (DE 6512, p. 5; Related Case 45) Osborn Law did not file a motion for review as provided under Rule 72(a), Fed. R. Civ. P. and/or LR72.02(b)(1), Local Rules of Court. NPC's motion to dismiss is, therefore, properly before the court.

## ANALYSIS

The following facts are relevant to NPC's motion to dismiss:

1)   Ms. Tucker died on November 8, 2009 (DE 3375; Related Case 15);

2)   Ms. Baber was substituted as the personal representative of the late Ms. Tucker's estate on October 12, 2010 (DE 3751, 3770; Related Case 16-17);

3)   The California courts discharged Ms. Baber as executor of the late Ms. Tucker's estate on May 8, 2012 (DE 6243, Ex. 1; Related Case 23);

4)   Ms. Baber remains the successor trustee of the "Janet G. Tucker Trust" (DE 6366, Ex. A-G; Related Case 40); and,

5)   Mr. Osborn was the attorney of record at all times relevant to the matter before the court (DE 2088, 2149, 3375, 3751, 6512; Related Case 11, 13, 15-16, 45).

The findings of fact and conclusions of law in the Magistrate Judge's order denying the

2

motion to substitute that are relevant to NPC's motion to dismiss are summarized below, the corresponding analysis in that order incorporated herein by reference:

1) The Case Management Order (CMO) does not apply to the specific facts in the underlying motion to substitute because the CMO addresses substitution only in the context of a plaintiff's death, not where, as here, there is a change from one living personal representative to another (DE 6512, p. 4; Related Case 45);

2) Rule 25(a), Fed. R. Civ. P. does not apply to the underlying motion to substitute because the facts in that motion pertained to a transfer of interest from one living person to another under Rule 25(c), Fed. R. Civ. P. (DE 6512, p. 4; Related Case 45);

3) Osborn Law was required to file a motion to substitute under Rule 25(c) within a "reasonable time" as provided under Rule 5(d)(1), Fed. R. Civ. P. (DE 6512, pp. 4-5; Related Case 45);

4) A "reasonable time" under the circumstances in the matter before the court was deemed to be ninety (90) days, the same time under the CMO for filing a motion to substitute if a plaintiff dies (DE 6512, pp. 4-5; Related Case 45);

5) The date that the California courts discharged Ms. Baber as executor of the late Ms. Tucker's estate, *i.e.*, May 8, 2012, was the "functional equivalent" of death under the CMO and the date on which the 90 days to file a motion to substitute began to run (DE 6512, p. 5; Related Case 45);

6) The 90-day period within which Osborn Law should have filed the motion to substitute ended on August 6, 2012 (DE 6512, p. 5; Related Case 45);

7) Osborn Law did not file a motion for an extension of time either prior to or after NPC filed its motion to dismiss (DE 6512, p. 5; Related Case 45);

8) Osborn Law did not file a motion to substitute until December 17, 2012, and then only when the Magistrate Judge ordered it to do so on December 5, 2012 (DE 6292, p. 1; Related Case 25);

9) The motion to substitute was filed more than four (4) months after it should have been under Rule 5(d)(1) (DE 6292, p. 5; Related Case 45);

10) Osborn Law offered no reason for the delay in filing the motion to substitute (DE 6292, p. 5: Related Case 45); and,

3

11) There was nothing in the record to suggest that the late-filed motion to substitute should have been granted on equitable grounds (DE 6512, p. 5; Related Case 45).

It is undisputed that Ms. Tucker, and the subsequent personal representative of her estate, Ms. Baber, were represented by Osborn Law, and had been since April 2009 when Mr. Osborn became attorney of record in this case. The law is well established that clients are ultimately responsible for the acts and/or omissions of their attorney. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97 (holding that it was error to "suggest[] that it would be inappropriate to penalize respondents for the omissions of their attorney"); *Link v. Wabash R. Co.*, 370 U.S. 626, 633 (1982)(holding that there is "no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client"); *United States v. Boyle*, 469 U.S. 241, 251 (1985)("reliance of a lay person on a lawyer . . . cannot function as a substitute for compliance with an unambiguous" rule).

Notwithstanding the foregoing, dismissal on procedural grounds is disfavored in the Sixth Circuit, subject to the sound discretion of the court. *See Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980). An abuse of discretion occurs when the district court's action leaves "[a] definite and firm conviction that the trial court committed a clear error of judgment." *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Courts in the Sixth Circuit typically have considered the following four factors when considering whether dismissal is proper for failing to comply with procedural rules: 1) whether failure to comply was a result of willfulness, bad faith, or fault; 2) whether the adversary was prejudiced by the dismissed conduct; 3) whether the dismissed party was warned that failure to comply could lead to dismissal; and 4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *See e.g., Schafer v. City of Defiance Police Dept., et al.*, 529 F.3d 731, 737 (6th Cir. 2008); *Knoll v. Am. Tel. & Tel. Co.*, 176

F.3d 359, 363 (6th Cir. 1999). Although none of the factors above is outcome dispositive, a case "is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll*, 176 F.3d at 363. These four factors are addressed below.

**Willfulness, Bad Faith or Fault:** Mr. Osborn was a member of the Plaintiffs' Steering Committee (PSC) (DE 87) at the time the Case Management Order (CMO) was entered on July 28, 2006 (DE 89). As a member of the PSC, Mr. Osborn is deemed to be knowledgeable of the requirements set forth in the CMO, the intent/purpose of those requirements, and his obligation to comply with those requirements. As a licensed attorney, and attorney of record in this MDL case, Mr. Osborn also is deemed to understand, and required to comply with, the Federal Rules of Civil Procedure.

As previously discussed, *supra* at p. 3, the CMO does not address the specific circumstances present in this issue, *i.e.*, the substitution of one living party in interest for another. However, the unmistakable purpose of paragraph V of the CMO, *i.e.*, "Substitution of Plaintiffs," is to ensure that there is a proper plaintiff in these MDL cases. The provisions of the CMO that pertain to substitution clearly envision that counsel will remain in contact with their clients and/or their personal representatives in the event of a plaintiff's death or incapacity. The CMO also is clear that this responsibility falls to plaintiffs' counsel, not the defendant.

As previously established, Ms. Baber had been discharged by the California courts as executor of Ms. Tucker's estate. Consequently, she no longer was a proper plaintiff in that capacity. Mr. Osborn had a duty to know that Ms. Baber had been discharged, that her discharge left the case without a proper plaintiff, and that a proper plaintiff had to be substituted. Mr. Osborn could not merely assume that, because Ms. Baber had been the executor of the late Ms. Tucker's estate, she could continue to represent the case without motion as successor trustee of Ms. Tucker's trust.

Assuming for the sake of argument that Osborn Law contacted Ms. Baber, or vice versa,

5

between May 8, 2012 when the California courts discharged her as executor of Ms. Tucker's estate, and November 12, 2012 when NPC filed its motion to dismiss, one of only two possibilities could have followed from that contact: either Ms. Baber informed Osborn Law that she had been discharged . . . or she did not. If Ms. Baber informed Osborn Law that she had been discharged, then Osborn Law either neglected to take the required action, or it did not realize that anything needed to be done. The fact that the Magistrate Judge had to order Osborn Law to file a motion to substitute supports the latter conclusion. On the other hand, if Ms. Baber did not inform Osborn Law that she had been discharged, then Osborn Law had a duty to inquire, especially since Ms. Tucker's estate was opened in 2010. If asked, Ms. Baber would have told Osborn Law that she had been discharged, in which case Osborn Law should have filed a motion to substitute which, as already established, it did not. The result is the same in either event – Osborn Law was at **fault** for not filing a motion to substitute within a "reasonable time."[1] The next question is whether Osborn Law's actions/inactions were willful.

Osborn Law's failure to file a motion to substitute in a "reasonable time" stems from the increasingly apparent pattern of what can best be described as willful neglect, a fact memorialized in the Magistrate Judge's January 16, 2013 order when he wrote: "Apparently, there was a total failure of communication between counsel for the Plaintiff in this litigation and counsel for the estate and trust in California." (DE 6327, p. 4; Related Case 37) Osborn Law has demonstrated more than once in this MDL that it has a sketchy record of keeping in touch with clients, of whom Osborn Law represented more than two hundred sixty (260) at the time the underlying substitution issue arose in this case. The Magistrate Judge noted this pattern of conduct again in his order denying the

---

[1] It goes without saying that, if Osborn Law did not have procedures in place to ensure that it remained in contact with Ms. Baber, or the attorney handling Ms. Tucker's estate in California, then that failure constitutes **fault** on its face.

motion to substitute when he wrote: "[c]ounsel's failure to track matters pertaining to his clients is a problem of his own making" (DE 6512, p. 3; Related Case 45), and again from the bench on April 11, 2013 during a hearing held under Rule 16, Fed. R. Civ. P. when the Magistrate Judge admonished Mr. Osborn to do a better job of keeping in contact with his clients.

The record shows that this also is not the first time that Osborn Law failed to keep in touch with the plaintiff in this particular case. Ms. Tucker died on November 8, 2009. (DE 3375; Related Case 15) However, a suggestion of death was not filed until July 8, 2010 – eight (8) months after the fact. (DE 3375; Related Case 15) Not only did the filing of the suggestion of death exceed the 30-day time frame in the CMO by seven (7) months (DE 89, ¶ V.A, p. 12), the fact that the suggestion of death was filed so late supports the conclusion that Osborn Law had not contacted Ms. Tucker in many months.

To the extent that Osborn Law's failure to keep in touch with its clients constitutes standard operating procedure (SOP), then that SOP is "knowing." To the extent that Osborn Law's failure to keep in touch with its clients – despite the Magistrate Judge's admonitions to do so – is "knowing," then its conduct is **willful**.

**Prejudice:** NPC cannot be said to have been prejudiced because it chose, as a matter of practice, to track the status Ms. Tucker's estate during the pendency of this action. On the other hand, NPC has had to bear the costs of litigating this issue, one caused by Osborn Law's failure to timely file a motion to substitute. To the extent that NPC has had to commit resources to litigate this issue, NPC has been prejudiced.

NPC also will have to bear the cost of going forward if its motion to dismiss is denied. More particularly, this case was among the first group of cases to be referred to fact discovery ion August 28, 2012, with March 15, 2013 as the date that a suggestion of remand was to be entered. (DE 6156) The intended date for suggestion of remand has passed. Moreover, to the extent that discovery has

7

been held in abeyance pending a resolution of this issue, remand will be **delayed** even longer, not to mention the fact that NPC will be prejudiced by having to continue to defend against the action longer as well. Finally, although it is tempting to assume that the actual cost to defend on remand would be the same if the case were remanded on schedule or at a later date, it is axiomatic that future costs generally are greater than present costs. Because it likely will cost more to defend against this case in the future, NPC will be prejudiced yet again.

**Prior warning.** The CMO provides that failure to substitute entitles the defendant to move for dismissal with prejudice. (DE 89, ¶ V.C.3, p. 13. As previously noted, however, *supra* at p. 3, the CMO addresses dismissal only in the context of Rule 25(a) and a plaintiff's death. However, as also noted, *supra* at p. 5, "Mr. Osborn was fully aware of the CMO, the requirements set forth therein, and the intent/purpose of those requirements." The intent/purpose of the CMO in the context of substitution is to ensure that there is a proper plaintiff in the cases in this MDL. Counsel should have realized that Rule 25(c) pertained under the facts present here, and that failure to file a motion to substitute under Rule 25(c) would constitute grounds for dismissal just as would have been the case had Rule 25(a) applied.

This case also is subject to dismissal under Rule 41(b), Fed. R. Civ. P. Rule 41(b) provides for involuntary dismissal of a case where the plaintiff fails "to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order." *Id*. The rule allows the courts to manage their dockets and avoid unnecessary burdens on courts and opposing parties. *Shavers v. Bergh*, 2013 WL 791528 * 1 (6th Cir. 2013)(citing *Knoll*, 176 F.3d at 363. The four factors set forth in *Shafer*, *supra* at pp. 4-5, are the same factors considered in determining whether dismissal under Rule 41(b) is proper. *Id*. (Citing *Schafer*, 529 F.3d at 737). As previously noted, *supra* at p. 5, Mr. Osborn is "deemed to understand . . . the Federal Rules of Civil Procedure." In other words, Mr. Osborn should have known that failing to file a motion to substitute when substitution was required could

8

result in dismissal. Moreover, as noted below, these four (4) factors should be decided in NPC's favor. Therefore, dismissal under Rule 41(b) is appropriate.

**Whether other less drastic sanctions were considered.** The Magistrate Judge recognizes that dismissal with prejudice is the ultimate sanction for Osborn Law's failure to comply with the intent/purpose of the CMO and Rule 25(c). However, after considering other less drastic sanctions, the Magistrate Judge has determined that dismissal with prejudice is the appropriate sanction in this case. Osborn Law's failure to file the required motion to substitute has burdened the court, strained scarce court resources, delayed this case, and prejudiced the defendant.

## CONCLUSIONS

Each of the four factors analyzed above favor the defendant. Accordingly, NPC's motion to dismiss should be granted.

## RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge recommends that the motion to dismiss filed by NPC in this case (DE 6242; Related Case 22) be **GRANTED**, that this case be **DISMISSED** with prejudice, and that any pending motions be **TERMINATED** as moot**.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 1st day of May, 2013.

/s/Joe B. Brown
Joe B. Brown
United States Magistrate Judge